THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* ALFRED EARL HARFLINGER, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* CHARLOTTE RICHARDS, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* WILLIAM LEON ALLEN, Defendant-Appellee.

Fifth District    Nos. 76-166, 167, 168 cons.

Opinion filed January 19, 1977.

480

Donald E. Irvin, State's Attorney, of Mt. Vernon, for the People.

Paul D. Giamanco, of Paul D. Giamanco & Associates, of Mt. Vernon, for appellees Alfred Earl Harflinger and Charlotte Richards.

James E. Dull, of Paul D. Giamanco & Associates, of Mt. Vernon, for appellee William Leon Allen.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

These cases which we have consolidated for opinion are appeals by the State taken from judgments entered by the circuit court of Jefferson County awarding attorney's fees to the defendants' court appointed

counsel. The only issue presented for review in each case is whether the award was in excess of statutory limits.

In *People v. Harflinger*, No. 76-166, the defendant was indicted for the offenses of murder, attempt murder, armed robbery and burglary. On July 25, 1975, after the public defender's motion to withdraw was granted, Paul Giamanco was appointed to represent the defendant. It appears that on November 7, 1975, the four causes were consolidated for trial and that on November 25, 1975, after a six-day jury trial, the defendant was found guilty as charged. A sentencing hearing was held on December 19, 1975, and on December 30, 1975, defense counsel Giamanco filed four verified petitions for attorney's fees. The petitions treated each charge against the defendant as a separate case. An itemized bill covering the attorney's services was also submitted which showed a total of 216 hours of work and a total charge of $4,782. The bill was calculated at a rate of $30 for each hour spent in court and $20 for each hour otherwise spent in representing the client. In his petitions, Giamanco only requested $1,000 per case for a total of $4,000. The State filed a motion in opposition to the fees requested. At a hearing on the petitions, Giamanco stated that since his itemized bill did not distinguish the hours worked on each charge, and that since the work was in any event overlapping, he had simply divided the total time rendered by the number of causes, to determine his fee per cause. Giamanco also stated that he had requested no more than $1,000 per cause since that was the statutory limit. The State did not dispute in the trial court, nor does the State now dispute, the trial court's treatment of this case as four separate cases for the purpose of awarding attorney's fees. The State argued that Giamanco was only entitled to a maximum $250 per case. Following the hearing the trial court awarded Giamanco $1,000 as compensation for his services in connection with the murder charge, $850 in connection with the attempt murder charge, $850 in connection with the armed robbery charge and $800 in connection with the burglary charge, for a total of $3,500.

In *People v. Richards*, No. 76-167, the defendant had been charged with and was convicted of armed robbery. This court reversed defendant's conviction and remanded the cause for a new trial. (*People v. Richards*, 28 Ill. App. 3d 505, 328 N.E.2d 692.) Subsequently, on June 25, 1975, after the trial court allowed the public defender to withdraw, the court appointed Paul Giamanco to represent her. On January 16, 1976, pursuant to plea negotiations, the defendant pleaded guilty to the charge of robbery. At the plea hearing, Giamanco filed a verified petition for attorney's fees claiming that he had spent a total of 40.3 hours representing his client and requesting a fee of $826. He also submitted an itemized bill calculated at a rate of $30 per courtroom hour and $20 per

hour otherwise spent representing his client. The trial court awarded Giamanco the amount requested. Thereafter the State filed a motion in opposition to the fee requested asserting that Giamanco could only be awarded a maximum of $250. Following a hearing the motion was denied.

In *People v. Allen*, No. 76-168, the defendant was charged on March 13, 1975, with two counts of aggravated kidnapping, two counts of kidnapping and one count of armed robbery. Four days later, the trial court appointed James E. Dull to represent the defendant. On October 31, 1975, pursuant to negotiations, the defendant pleaded guilty to the reduced charge of robbery and the other charges were dismissed. On November 21, 1975, Dull filed a verified petition for attorney's fees claiming that he had spent a total of 25 hours representing the defendant and requesting a fee of $599.19. As in the other cases at bar, the itemized bill he submitted was calculated at a rate of $30 for each hour spent in court and $20 for each hour otherwise spent. The State filed a motion in opposition to the fee requested and following a hearing the trial court awarded the amount requested.

On appeal, the State contends that attorney's fees in these cases should have been limited to a maximum $250 unless extraordinary circumstances or protracted representation was shown. The State relies on the statutory provision that was in effect at the time the attorneys were appointed by the court. That provision, section 113—3(c) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 113—3(c)), stated:

> "Upon the filing with the court of a verified statement of services rendered the court shall order the county treasurer of the county of trial to pay counsel other than the Public Defender a reasonable fee stated in the order not to exceed $150 for each defendant represented in misdemeanor cases and $250 in felony cases, in addition to expenses reasonably incurred as hereinafter in this Section provided, except that, in extraordinary circumstances, payment in excess of the limits herein stated may be made if the trial court certifies that such payment is necessary to provide fair compensation for protracted representation, and the amount of the excess payment is approved by the Chief Judge of the Circuit. A trial court may entertain the filing of this verified statement before the termination of the cause, and may order the provisional payment of sums during the pendency of the cause."

This section provided compensation for court appointed attorneys. Prior to 1967 subsections (c) and (d) of section 113—3 provided for a maximum fee of $250 (plus $250 for costs) in capital cases and a maximum fee of $150 in all other criminal cases. These sections contained no provision for payment in excess of these limits. After the opinion in *People ex rel. Conn v. Randolph*, 35 Ill. 2d 24, 219 N.E.2d 337, the

subsections were amended and subsection (c), from 1967 to October 1, 1975, allowed a fee up to $150 in misdemeanor cases and up to $250 in felony cases, plus additional compensation in cases involving extraordinary circumstances or protracted representation, if the excess amount was approved by the chief judge of the circuit.

On October 1, 1975, while the cases before us were pending in the trial court, the following amended provision came into effect:

> "Upon the filing with the court of a verified statement of services rendered the court shall order the county treasurer of the county of trial to pay counsel other than the Public Defender a reasonable fee stated in the order and based upon a rate of compensation of not more than $30 for each hour spent while court is in session and not more than $20 for each hour otherwise spent representing a defendant, and such compensation shall not exceed $150 for each defendant represented in misdemeanor cases and $1000 in felony cases, in addition to expenses reasonably incurred as hereinafter in this Section provided, except that, in extraordinary circumstances, payment in excess of the limits herein stated may be made if the trial court certifies that such payment is necessary to provide fair compensation for protracted representation, and the amount of the excess payment is approved by the Chief Judge of the Circuit. A trial court may entertain the filing of this verified statement before the termination of the cause, and may order the provisional payment of sums during the pendency of the cause." Ill. Rev. Stat. 1975, ch. 38, par. 113—3(c) (amended effective Oct. 1, 1975).

This amended subsection establishes maximum hourly rates of compensation upon which a reasonable fee may be based and increases the maximum fee which may be awarded to $1,000 in felony cases.

Our task is to determine whether the legislature intended the amending provision to apply to pending cases. Our research indicates that this issue is one of first impression.

■■ A cardinal canon of statutory construction is to ascertain the intent of the legislature by considering not only the language used but also the reason for the law and the object to be obtained. (*People ex rel. Simpson v. Funkhoser*, 385 Ill. 396, 52 N.E.2d 1014; *People v. Sims*, 131 Ill. App. 2d 327, 266 N.E.2d 536.) Where a statute has remedial features and is at the same time in derogation of the common law, it will be strictly construed. *Cedar Park Cemetery Association, Inc. v. Cooper*, 408 Ill. 79, 96 N.E.2d 482.

■■ In *People ex rel. Conn v. Randolph*, 35 Ill. 2d 24, 28-29, 219 N.E.2d 337, 340, the court stated:

> "An attorney is an officer of the court and his license to practice carries with it the steadfast obligation to serve the court whenever

called upon to do so. The defense of paupers accused of crime has traditionally been considered one of the services that every member of the bar must be prepared to provide upon court request."

Compensation is provided for the attorney who meets his duty to the court and the public, in order to both protect the indigent defendant's right to counsel and to prevent an undue burden from being placed upon the attorney. (*People ex rel. Conn v. Randolph; People v. Sanders*, 58 Ill. 2d 196, 317 N.E.2d 552; *People v. Sims*, 131 Ill. App. 2d 327, 266 N.E.2d 536.) In order to accomplish this purpose without at the same time imposing a substantial financial burden upon the public, the legislature has provided for a reasonable fee up to a maximum limit to be exceeded only under specified exceptions. The legislature's addition within its amended provision establishing hourly rates of compensation is clearly intended to strike a better balance between these conflicting policy interests. Furthermore, the increase in the maximum limits of compensation is clearly designed to better reflect economic reality.

The gist of the State's contention in the instant appeal is that a defense attorney appointed prior to October 1, 1975, is bound to the terms of compensation as they existed at the time of his appointment and thus cannot be eligible for the enhanced benefits of section 113—3(c) as amended. In support of its contention the State relies on *United States v. Thompson* (2d Cir. 1965), 356 F.2d 216, and *Dolan v. United States* (5th Cir. 1965), 351 F.2d 671. (See also *United States v. Dillon* (9th Cir. 1965), 346 F.2d 633; *United States v. Pope* (D. Neb. 1966), 251 F. Supp. 234, *aff'd on other grounds* (8th Cir. 1967), 372 F.2d 710; *Ray v. United States* (8th Cir. 1966), 367 F.2d 258.) In the cited cases, the Federal courts have dealt with an analogous problem in interpreting a provision of the Criminal Justice Act of 1964 (18 U.S.C. §3006A(d)). These cases held the court appointed attorneys bound to the statutory compensation provisions, if any, in effect at the time of their appointment. The State's reliance on these cases, however, is misplaced because of the significantly distinguishable Federal statutory provision upon which the cases were based and the one which we must here construe.

The Federal provision in effect at that time stated:

"An attorney appointed pursuant to this section * * * shall, at the conclusion of the representation * * * be compensated at a rate [the rates are then given] * * *." (18 U.S.C §3006A(d)(1).)

This provision makes the date of appointment of primary importance since that is the date an attorney receives an entitlement to compensation, depending on subsequent service rendered and subject to court approval. Therefore in *Thompson*, the court felt compelled to deny the court appointed counsel compensation for services rendered subsequent to the

effective date of 18 U.S.C. §3006A because his appointment had been made prior thereto.

■■ The terms of section 113—3(c) of the Code of Criminal Procedure as amended, provides otherwise:

> "Upon the filing with the court of a verified statement of services rendered the court shall order * * * a reasonable fee * * * "

The legislature thus has made an entitlement to compensation contingent upon the filing of a verified statement, and court approval thereof, for services already rendered. The language of the provision permits no other construction but that an attorney's statutory right to a reasonable compensation only arises "upon the filing" of a verified statement of services rendered. That the legislature additionally intended the right to compensation to arise, normally, only after the close of the representation is made manifest by the last sentence of the provision which states:

> "A trial court may entertain the filing of this verified statement before the termination of the cause, and may order the provisional payment of sums during the pendency of the cause."

Section 113—3(c) makes no mention of the time of appointment and therefore it can only be concluded that the legislature chose to assign no relevance to that time for purposes of determining reasonable attorney's fees. Instead, it is the time a verified statement of services is filed which we believe controls the issue of whether the attorneys before us shall be compensated under the amended provision. Such a construction is also consistent with the goals of the provision of protecting an indigent defendant's right to counsel while preventing an undue burden from being placed upon the attorney and avoiding a substantial financial burden from being placed upon the public.

■■ The State's contention that an attorney is bound to the compensation provision in effect at the time of his appointment appears predicated on a contract theory. However, an attorney's appointment to represent an indigent defendant does not stem from his acceptance of a contract for fees offered by the State but stems instead from his independent duty and obligation that he owes to the court and to the public. Thus no party is bound to an agreed rate of compensation and absent a statutory provision, an attorney may only, at best, look to the court to exercise its inherent powers if there is to be any compensation at all. *People ex rel. Conn v. Randolph*, 35 Ill. 2d 24, 219 N.E.2d 337. We find that whatever the attorneys in the instant appeal may have thought their compensation would be at the time of their appointments is of no consequence.

● 5 In *People v. Harflinger* the attorney filed his verified statements on December 30, 1975; in *People v. Richards* the date of filing was January 16, 1976; and in *People v. Allen* the date was November 21, 1975.

Since the verified statements had all been filed after October 1, 1975, the date the amended provision came into effect, the attorneys became entitled to compensation under the provision as amended.

We note the State's argument that counsel appointed prior to an amendment of section 113—3(c) may have an incentive to delay the proceedings until the effective date of the amendment. However, no such allegation against the attorneys has been made or could be made in the cases before us. We therefore need not deal with this hypothetical situation or the appropriate sanctions that may be brought to bear against such serious misconduct.

■■ ■ We also note that in one of the cases before us, *People v. Harflinger*, the trial court treated each of the charges against the defendant as a separate case so that the attorney was able to make four separate claims for compensation. The record shows that each award was exclusively based so that the attorney, Giamanco, was not compensated for the same service more than once. However, the trial court's finding that the case was actually four separate cases had the effect of avoiding the statutory maximum of $1,000. Giamanco was awarded a total of $3,500 when he may only have been entitled to $1,000 under the statute. The State failed to object on this point, and indeed acquiesced therein, and failed to raise this issue in its appeal. With reference to this issue in *Harflinger* we particularly note that the applicable act imposes a limitation on the hourly rates for hours spent "representing a defendant," not for hours spent on each case of a defendant; and the limitation on the total amount of $150 in misdemeanor cases and $1,000 in felony cases is likewise applied, not for each case of a defendant, but "for each defendant represented." As a result of this language, cast in terms of each defendant rather than in terms of each case of a defendant, the trial court's finding that four separate cases were involved for the purpose of fixing attorney fees in *People v. Harflinger* was in error. Since the State elected to provide this court with only the record specifically dealing with attorney fees and not the record of the six-day jury trial wherein Harflinger was tried on the four felony counts, we are unable to make a determination whether this is a case in which there were such "extraordinary circumstances" as to require payments in excess of the limits stated and certification "that such payment is necessary to provide fair compensation for protracted representation." We therefore reverse the order fixing fees in *People v. Harflinger* and remand that matter to the circuit court of Jefferson County for further consideration and proceedings consistent with this opinion. We trust that on remand evidence will be presented pursuant to the guidelines set forth in *People v. Sims*, 131 Ill. App. 2d 327, 266 N.E.2d 536.

For the foregoing reasons, we affirm the judgments of the circuit court

of Jefferson County fixing attorney's fees in *People v. Richards* and *People v. Allen*, and we reverse and remand *People v. Harflinger*.

*People v. Harflinger*, No. 76-166, reversed and remanded.

*People v. Richards*, No. 76-167, affirmed.

*People v. Allen*, No. 76-168, affirmed.

G. J. MORAN and KARNS, JJ., concur.